UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID KOCHER,<br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | 3:14-cv-00608-MMD-VPC<br><br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#11), defendant's opposition and cross-motion to affirm (#s 12/13), and plaintiff's reply (#14). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

**I.　　FACTUAL AND PROCEDURAL BACKGROUND**

On June 4, 2010, David Kocher ("plaintiff") filed claims for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Social Security Act. (Administrative Record ("AR") 239–46.) In both applications, plaintiff alleged his disability commenced on June 15, 2009. (AR 243.) The Social Security Administration denied plaintiff's applications in the first instance on September 23, 2010, and upon reconsideration on November 19, 2010. (*Id.* at 168–71, 175–80.)

On January 19, 2012, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlinson. (*Id.* at 82–109.) The ALJ issued a written decision on February 2, 2012, finding that plaintiff had not been disabled at any time between June 15, 2009 and the date of the decision. (*Id.* at 150–57.) Upon plaintiff's appeal, the Appeals Council granted the request for review and remanded the case to the ALJ for further proceedings. (*Id.* at 162–66.) The Council instructed the ALJ to obtain additional evidence regarding

plaintiff's impairments, to further evaluate plaintiff's subjective complaints, to further consider plaintiff's residual functional capacity ("RFC"), and, if appropriate, to seek additional evidence from a vocational expert. (*Id.* at 165.) Following a supplemental hearing on February 11, 2013 (*id.* at 110–42), the ALJ issued a written decision on April 10, 2013, again finding that plaintiff was not disabled between the alleged onset date and the date of the decision, (*id.* at 17–26). Plaintiff appealed, and the Appeals Council denied review. (*Id.* at 1–4.) Thus, the ALJ's decision became the final decision of the Commissioner ("defendant").

Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on January 6, 2015 (#3). In his motion for remand or reversal, plaintiff contends that the ALJ erred in three respects: first, she incorrectly found that plaintiff's impairments did not meet or equal a listed impairment (#11 at 6–8); second, her residual functional capacity analysis is not supported by substantial evidence (*id.* at 8–9); and third, she failed to articulate clear and convincing reasons for discounting plaintiff's credibility (*id.* at 10–14).

## II. STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI and SSI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

1  reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d
2  1153, 1159 (9th Cir. 2012) (citation and quotation omitted).

3        Although the ALJ need not discuss every piece of evidence in the record, she cannot
4  ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th
5  Cir. 2012) (citation omitted). The ALJ's discussion must adequately explain the decision in light
6  of such evidence: "the ALJ, not the district court, is required to provide specific reasons for
7  rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006)
8  (specifically discussing rejection of lay testimony). The district court's review is thus constrained
9  to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

10        To determine whether substantial evidence exists, the court must look at the record as a
11  whole, considering both evidence that supports and undermines the ALJ's decision. *Robbins v.*
12  *Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("A reviewing court must
13  consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum
14  of supporting evidence.'"). Where "the evidence is susceptible of more than one rational
15  interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th
16  Cir. 2007) (citation omitted). The ALJ alone is responsible for determining credibility and
17  resolving ambiguities. *Garrison*, 759 F.3d at 1010.

18        **III.    DISCUSSION**
19  **A.    SSDI and SSI claims are evaluated under a five-step sequential process.**

20        The Commissioner follows a five-step sequential process for determining whether a
21  claimant is "disabled" for the purposes of SSDI and SSI. 20 C.F.R. §§ 404.1520(a)(4),
22  416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to
23  determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§
24  404.1520(a)(4)(i); 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner
25  denies the claim. *Id.* §§ 404.1520(b), 416.920(b). The second step requires the ALJ to determine
26  whether the claimant's medically determinable impairment is "severe." *Id.* §§ 404.1520(a)(4)(ii),
27  416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical
28  or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). The Commissioner

will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.* In step three, the claimant's impairment is compared to the Agency's list of impairments. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id*. Pt. 404, Subpt. P, App. 1 ("List of Impairments"). The List of Impairments "define[s] impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citation and quotation omitted).

In making the step four determination, the ALJ considers the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. §§ 404.1520(f), 416.9209(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In evaluating the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. §§ 404.1545(a)(3); 416.945(a)(3). However, the ALJ is not required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-step inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ

determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation omitted).  Second, where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."[1]  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Brown-Hunter v. Colvin*, No. 13–15213, 2015 WL 4620123 (9th Cir. Aug. 4, 2015) (holding that the ALJ "does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC]").  The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding).  The focus, however, is ultimately upon the reviewing court.  The credibility determination must be "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of

---

[1] Defendant advocates that the ALJ's credibility determination should be held to a "substantial evidence" standard. (#12 at 11–12.) As recognized by the defendant, however, the Ninth Circuit has recently rejected the invitation to adopt a lower standard. *See Garrison*, 759 F.3d at 1015 n.18; *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *Brown-Hunter*, 2015 WL 4620123, at *4.  Binding precedent therefore forecloses defendant's argument.

objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when weighing the credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id*. §§ 404.1520(g), 416.920(g).

**B.     The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claim for benefits, the ALJ followed the five-step process described above. (AR 19–25.) The ALJ determined that plaintiff had not engaged in substantial gainful activity since June 15, 2009, the alleged onset date, and had "degenerative disc disease of the lumbar spine; status-post open-reduction internal-fixation (ORIF) surgery for [a] right tibial plateau fracture; peripheral neuropathy; status-post ORIF surgery for [a] right femoral fracture;

and intermittent left-sided peripheral vision loss." (*Id.* at 19.) At step two the ALJ found each to be a severe impairment under the applicable regulations.[2] (*Id.*) The impairments did not, however, meet or medically equal the severity of a listed impairment in the relevant subpart of the regulations; therefore, a finding of disability was not directed at step three. (*Id.*)

The ALJ proceeded to step four and made several findings. First, the ALJ concluded that plaintiff's RFC permitted sedentary work with the following additional restrictions: he is permitted to sit or stand for approximately two minutes, once per hour, in order to change positions or stretch; he makes no more than occasional postural movements; he is not exposed to "hazards," including heights or operating dangerous machinery; and he must use a cane for ambulation. (*Id.*) Second, the ALJ found that plaintiff's statements regarding the intensity and limiting nature of his impairments were consistent with a reduced capacity for work, but were not credible to the extent alleged. (*Id.* at 21–24.) Finally, the ALJ determined that plaintiff's RFC prevented him from returning to any of his past relevant work. (*Id.* at 24.)

Proceeding to step five, the ALJ found that plaintiff could perform other jobs available in the national economy. (*Id.* at 25.) First, the ALJ found that the grids did not direct a finding of disability. (*Id.*) Relying on the testimony of a vocational expert, the ALJ then found that plaintiff's age, education, work experience, and RFC would allow him to perform three representative occupations that exist in significant numbers in the national economy: a microfilm document preparer, of which there are 64,000 jobs nationally; an addresser, of which there are 12,300 jobs nationally; and a call out operator, of which there are 9,200 jobs nationally. (*Id.*) Accordingly, the ALJ held that plaintiff was not disabled and denied his SSDI and SSI claims. (*Id.* at 25–26.)

**C.   The ALJ did not err in finding that plaintiff did not meet or equal Listing 12.04A.**

As discussed above, the ALJ found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.*

---

[2] Although in December 2011 and January 2012 plaintiff complained of memory loss, the ALJ determined that the record did not support a finding of any medically determinable impairments related to cognition or memory. (AR at 20.)

at 20.) Plaintiff challenges that conclusion, claiming that his combination of impairments "at least equal[s]" Listing 1.04A. (#11 at 6.) More specifically, he contends that the ALJ's "conclusory statement" at step three was not supported by substantial evidence, and that she improperly failed to consider equivalence. (*Id.* at 7.) Defendant opposes plaintiff's assertions on the grounds that the medical evidence does not satisfy all the criteria of Listing 1.04A, that the ALJ's discussion in other parts of the decision substantiate her step three finding, and that plaintiff offered no theory to explain how his impairments equal the listing. (#12 at 6–8.)

A claimant bears the burden of showing that he or she has an impairment that meets or equals a listed impairment. *Burch*, 400 F.3d at 683. To *meet* a listed impairment, the claimant must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. To *equal* a listed impairment, the claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the all of the criteria of a listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a); *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Zebley*, 493 U.S. at 531); *Tackett*, 180 F.3d at 1099. A showing that the "overall functional impact" of the claimant's impairment is as severe as a listed impairment is insufficient. *Kennedy*, 738 F.3d at 1176.

Listing 1.04A requires a claimant to show a disorder of the spine, such as degenerative disc disease, that has "result[ed] in compromise of a nerve right (including the cauda equina) or the spinal cord," along with: "A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." List of Impairments, § 104.

The ALJ did not err in finding that plaintiff's impairments did not meet the criteria above. As discussed by the ALJ, an MRI taken of plaintiff's lumbar spine in September 2010 showed a prominent Schmorl's node; prominent disk material projecting posteriorly, which filled a third of

the space and was large enough to displace nerve roots; moderate central canal stenosis with symmetric disc bulging; and prominent facets. (AR 21–22, 451.) The vertebral body showed no evidence of edema or acute compression. (*Id.* at 451.) During an August 2010 consultative examination, a medical examiner diagnosed plaintiff with "degenerative disc disease of the lumbar spine resulting in chronic pain, bilateral lower extremity neuropathy with unknown etiology, positional vertigo based on subjective complaints, hypothyroidism, hyperlipidemia, and tobacco abuse." (*Id.* at 22, 449.) He noted however that plaintiff's back appeared normal, with some reduced range of motion, and that plaintiff displayed negative bilateral straight leg raises and full range of motion in all extremities. (*Id.* at 22, 448–49.) The ALJ's finding that plaintiff's impairments did not meet Listing 1.04A is therefore supported by the record. Although diagnosed with degenerative disc disease, plaintiff did not satisfy all the criteria; the absence of evidence of nerve root compression, the negative straight leg raising tests, and plaintiff's full range of motion precluded a finding to the contrary.

Moreover, it is irrelevant that the ALJ did not discuss the supporting medical evidence immediately following her step three finding. Although "a boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet a listed impairment]," the ALJ need not place the required support under a specific heading or in a specific section. *Lewis v. Apfel*, 236 F.3d 503, 512–13 (9th Cir. 2001) (quoting *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). As in *Lewis*, the ALJ adequately analyzed the evidence elsewhere in her decision.

Nor did the ALJ err by omitting a discussion of equivalency. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see also Lewis*, 236 F.3d at 514. Although plaintiff recites the results of medical examinations and his medication prescriptions in his motion (#11 at 7–8), and argues in his reply that the evidence is "consistent with the equaling of th[e] listing" (#14 at 3), the record does not indicate that plaintiff advanced an argument for equivalency to the ALJ. In addition, plaintiff fails to explain how his impairments medically equal each of the criteria in Listing 1.04A. *Kennedy*, 738 F.3d at 1176. Under the circumstances, the ALJ was not required

to discuss whether plaintiff's impairments equaled Listing 104A. The court therefore finds that the ALJ did not err at step three.

**D.     The ALJ's RFC assessment for a limited range of sedentary work was supported by substantial evidence.**

Somewhat buried within his discussion of equivalency, plaintiff also challenges the ALJ's step four assessment of his RFC. (#11 at 8.) Plaintiff contends that the ALJ erred in finding him capable of a limited range of sedentary work, and that the finding lacks the support of substantial evidence because the ALJ failed to seek an updated medical opinion after plaintiff's ORIF surgeries in 2011 and 2012. (*Id.* at 8–9.)

In Social Security cases, the ALJ has an "independent duty to fully and fairly develop the record," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and quotation omitted). This duty is not absolute. Because the claimant bears the burden of proving disability up through step four, it is triggered only when evidence in the record is ambiguous or inadequate, so as to preclude its proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (holding that the duty was triggered where the evidence suggested "obvious vicissitudes" in the claimant's health).

Because the record was neither ambiguous nor inadequate to allow for proper evaluation of the evidence, the ALJ had no duty to further develop the record with an updated medical opinion. Although plaintiff correctly states that the ALJ accorded great weight to assessments by the consultative examiner and state agency reviewing physicians, each rendered in 2010 (#11 at 8; AR 22), the ALJ also had before her plaintiff's medical records through 2012. (AR 324–1137.) Notably, plaintiff "submitted no additional evidence of any medical visits" between December 27, 2012 and April 10, 2013, when the ALJ issued her decision, to supplement the record with respect to his December 2012 ORIF surgery or to any of his other impairments. (AR 23.) Nevertheless, the ALJ discussed at length the medical treatment plaintiff received from 2010 to 2012, including plaintiff's two ORIF surgeries and various medical tests. She also explicitly referred to plaintiff's ongoing symptoms in concluding that his RFC allowed performance of

sedentary work.³ (*Id.* at 22–23.) While an additional consultative examination may have been helpful, the ALJ's assessment can hardly be characterized as "nothing more than a lay medical opinion," as plaintiff argues. (#11 at 9.) Accordingly, the court finds that the ALJ did not shirk her duty to develop the record, and that her RFC assessment was supported by substantial evidence.

**D.     The ALJ permissibly discounted plaintiff's subjective pain allegations.**

Finally, plaintiff argues that the ALJ erred because she articulated legally insufficient reasons for discrediting plaintiff's subjective pain allegations. Here, the ALJ provided five reasons: (1) the objective medical evidence in the record "does not strongly support plaintiff's allegations of disabling symptoms and limitations"; (2) the relatively routine and conservative nature of plaintiff's treatment; (3) plaintiff made inconsistent or exaggerated statements regarding various medical conditions; (4) plaintiff's medical exams did not display the "ongoing muscle wasting or muscle atrophy" that would be expected after "several years of inactivity to unrelenting pain"; and (5) plaintiff stopped working because he was laid off, rather than due to his disability, "suggest[ing] that he was capable of working." (AR 21–24.) The court considers each in turn.

First, the ALJ's citation to the lack of strong support provided by the objective medical evidence is a "clear and convincing" reason for discrediting plaintiff's testimony. Plaintiff contends that the objective medical evidence supports his allegations, reciting his diagnosis of degenerative disc disease, status-post ORIF surgery for the right tibial plateau and femoral fractures, peripheral neuropathy, and intermittent left-sided vision loss. (#11 at 12.) In the alternative, plaintiff argues that the ALJ erred by discrediting his testimony based solely on an alleged lack of medical evidence. (*Id.*)

---

³ "I find the claimant's limited mobility and residual pain from his multiple leg surgeries along with his ongoing neuropathic symptoms treated with medication supports a restriction to sedentary work activity with a sit/stand option every hour for about two minutes to adjust for discomfort/stretch. I note the claimant used a cane throughout most of the period at issue, also documented within the medical evidence . . . ." (AR 23.)

11

Plaintiff's argument falls flat. The ALJ did not state that no objective medical evidence supported plaintiff's allegations of pain, but rather, that the record did not strongly support a finding of *disabling* pain. Based on the totality of the medical evidence, the ALJ concluded that the evidence provided an insufficient basis to find disability. The ALJ supported her determination by pointing to the findings of the consultative examiner and the state agency consultant, who each concluded that plaintiff was capable of a "reduced light/sedentary exertional level." (AR 22.) The ALJ also discussed clinical findings from medical exams between November 2011 and September 2012; with regard to plaintiff's back impairment these "indicated decreased bilateral dorsalis pedis pulse but no other neurologic/sensory abnormalities, no edema, no acute distress, and no other significant abnormalities in any areas." (*Id.*) Similarly, routine eye exams conducted in 2012 led to a diagnosis of left-sided peripheral vision loss, but also showed "no acute intracranial abnormality;" "only mild atherosclerotic plaque with no significant stenosis;" and an echocardiogram, carotid ultrasound, and blood coagulation studies "within normal limits." (*Id.* at 23.) The ALJ's conclusion that the objective medical evidence did not strongly support plaintiff's allegations is therefore supported by substantial evidence in the record. Although a lack of objective medical evidence cannot be the sole basis for discounting credibility, the ALJ may properly consider it among other factors. *Burch*, 400 F.3d at 681.

Second, the ALJ permissibly cited the conservative nature of plaintiff's pain treatment. Plaintiff challenges the ALJ's rationale on the basis that she failed to cite "any evidence that there exists more aggressive treatment options or that the medical professionals have recommended them. [Plaintiff] cannot be discredited for failing to pursue non-conservative treatment options where none exist." (#11 at 13.)

Plaintiff's argument misstates the facts and misconstrues the ALJ's decision. To begin, the ALJ noted at least one instance in which plaintiff's doctors recommended more aggressive treatment. With regard to plaintiff's vision impairment, "[v]isual field testing was recommended [to plaintiff] consistently since [his] initial diagnosis of left-sided peripheral vision loss in June 2012." (AR 23.) He did not undergo the recommended tests due to alleged financial distress, meanwhile continuing to "smoke[]/afford[]" half a pack of cigarettes each day. (*Id.*) An

inadequately explained failure to seek treatment can be relevant to a credibility determination. *Molina*, 674 F.3d at 1112.

In addition, the ALJ discussed the pain-management focus of plaintiff's treatment for his back and leg impairments not to suggest that plaintiff should have sought out more aggressive treatment options, but rather to infer that because plaintiff's impairments were managed by "relatively little ongoing treatment . . . other than medications with few adjustments," his allegations of disabling pain were less credible. (AR 24.) The Ninth Circuit has observed that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). However, the *Carmickle* court qualified this nuance by explaining that the record in that case demonstrated the unavailability of more aggressive treatment options. *Id.* Otherwise, the Ninth Circuit has typically deemed conservative treatment with pain medication to be a legally sufficient reason for discounting credibility, as is a discrepancy between the frequency of treatment and the level of pain alleged. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Molina*, 674 F.3d at 1113–14; *Tommasetti*, 533 F.3d at 1039 (deeming permissible the ALJ's inference that the claimant's favorable response to conservative treatment undermined his allegations of disabling pain). In this case, the ALJ cited exactly these reasons (*see* AR 24), and the record supports this determination (*see, e.g.*, *id.* at 90, 91) (stating that plaintiff visited his physician only "once every three months," and that the medications were least "somewhat" effective). The determination is free of error.

Third, the ALJ's citation to inconsistent or exaggerated statements by plaintiff was clear and convincing. Conceding that "inconsistencies in the record can lead to an unfavorable credibility finding," plaintiff claims that the ALJ's determination was improper because she failed to confront plaintiff and seek an explanation. (#14 at 6.)

The court does not agree that the ALJ was obligated to confront plaintiff. To support his claim, plaintiff cites *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009), an appeal of an immigration judge's ("IJ") denial of asylum. There, the IJ based an adverse credibility finding on

13

inconsistencies between the asylum seeker's account and a police report, even though the asylum seeker "gave a plausible explanation . . . for one of the inconsistencies." *Id.* at 1091. The Ninth Circuit held that, where a partial explanation had been provided, such inconsistencies could "not serve as substantial evidence for a finding that [the asylum seeker] was not credible" unless the IJ gave the asylum seeker an opportunity to explain, or otherwise addressed his explanation "in a reasoned manner." *Id.* at 1091–92. Plaintiff cites no authority for the proposition that the holding of *Soto-Olarte* applies in the Social Security context.[4] Quite the opposite, where substantial evidence supports an ALJ's credibility determination, the Ninth Circuit has refused a claimant the chance to explain her inconsistent statements and other factors leading to an adverse credibility determination. *See Tonapetyan*, 242 F.3d at 1148.

The record contains, and the ALJ cited, substantial evidence of inconsistent or exaggerated statements. For example, the ALJ noted that although plaintiff alleged during a clinic visit in December 2009 that he had broken his left hip a few weeks prior, and complained of hip pain in July 2010, no x-rays, clinical findings, or other tests taken during the period support his assertion. (AR 21.) Similarly, in April 2010 plaintiff presented claiming to have been diagnosed with bilateral lower extremity deep vein thrombosis and requesting a refill of his medication, but a Doppler study found no evidence of the condition. (*Id.*) As previously discussed, the ALJ also considered the discrepancy between plaintiff's apparent ability to afford to smoke a half pack of cigarettes each day, and the financial distress he alleged as a reason for not seeking treatment. (AR 23.) Inconsistencies between plaintiff's testimony, conduct, daily activities, and symptoms provide a legally sufficient reason to discredit subjective complaints. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). This reason was supported by substantial evidence in the record, and was therefore a proper basis for discounting plaintiff's credibility.

---

[4] Other district courts within the Ninth Circuit have similarly refused to apply the rule articulated in *Solo-Olarte* to Social Security cases. *See, e.g., Mulay v. Colvin*, No. EDCV 13–2045 AJW, 2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015); *Palomo v. Colvin*, No. CV 14–3547 JC, 2014 WL 4929040, at *7 n. 6 (C.D. Cal. Oct.1, 2014); *Montelongo v. Colvin*, No. 1:13–cv–00956–SKO, 2014 WL 4627245, at *10 (E.D. Cal. Sept.16, 2014).

Unlike the reasons stated above, substantial evidence does not support the fourth and fifth reasons the ALJ cited for discounting plaintiff's credibility.  Fourth, the ALJ noted that plaintiff's examinations did not reveal the "ongoing muscle wasting or muscle atrophy normally associated with pain and inactivity," and that would be expected if plaintiff's allegations of "several years of inactivity to unrelenting pain" were "fully credible."  (AR 23–24.)  A lack of evidence showing muscle atrophy can be a proper basis for discounting a claimant's testimony of disabling pain.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (approving the ALJ's finding that the claimant was not fully credible where she testified to pain that required her to lie in a fetal position all day, but she exhibited no signs of muscular atrophy).  Plaintiff's case, however, is distinguishable from *Meanel*.  Plaintiff did not claim to be bedridden or completely incapacitated.  Although he testified that he was inactive for most of each day, reading or watching television, he also stated that he does limited cleaning around the house, occasionally takes public transportation, and helps with grocery shopping.  (AR 118–120, 123, 128.)  Arguably, these activities are sufficient to fend off atrophy.  The ALJ also did not cite to any statement by any medical provider indicating that muscle wasting or atrophy would necessarily accompany plaintiff's impairments and alleged level of pain.  Thus, while true that plaintiff did not exhibit significant muscle atrophy, the ALJ's observation is not particularly compelling.

The ALJ's fifth reason for discounting plaintiff's pain testimony also lacks the support of substantial evidence.  Observing that plaintiff's earnings were "fairly steady up until he stopped working at [the] alleged disability onset date," the ALJ stated that plaintiff "reported he stopped working in June 2009—the alleged onset date—because he was laid off due to a lack of available work.  This suggests that he was capable of working despite his allegedly disabling impairments in June 2009."  (AR 21.)  However, the exhibit the ALJ cites and the hearing testimony both indicate that plaintiff stopped working in 2007, not in 2009.  (AR 21, 87, 256.)

Defendant cites to *Bracket v. Commissioner of Social Security Administration*, 468 Fed. App'x 754 (9th Cir. 2012) and *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001) in support of the ALJ's reasoning.  But in *Bracket*, the claimant performed heavy work for nine years after his alleged back pain began, he stopped working when he was laid off due to a plant closure, and he

told his doctor the plant closure was the reason he stopped working. 468 Fed. App'x at 755. The claimant in *Bruton* also told his doctor that "he left his job because he was laid off, rather than because he was injured," and alleged a disability onset date that was the same as the date he was laid off. 268 F.3d at 828. Here, by contrast, plaintiff did not claim that he was disabled before or at the time he was laid off, or that he left work due to his disability. Rather, approximately a year and a half passed between the time he stopped working in November 2007 and his alleged disability onset date of June 2009. Neither the ALJ nor the defendant explain how these facts suggest that plaintiff could work in June 2009, or that he may have sought disability benefits because was laid off. *See, e.g., Shehan v. Astrue*, No. EDCV 08–01302(MLG), 2009 WL 2524573, at *13 (C.D. Cal. Aug. 17, 2009) ("[T]he record here does not support the inference that Plaintiff sought disability benefits simply because she was laid off from work. Although Plaintiff admitted that she stopped working . . . for reasons unrelated to her alleged impairments, both jobs ended long before her alleged onset date."). Absent further explanation, plaintiff's reason for leaving his job was not a proper basis for discounting his credibility.

Although two of the five reasons cited by the ALJ are not a proper basis for discounting plaintiff's credibility, the ALJ's error was harmless because her credibility finding was supported by other clear and convincing reasons. So long as the remaining reasons are valid and supported by substantial evidence, "the error does not negate the validity of the ALJ's ultimate credibility conclusion . . . ." *Carmickle*, 533 F.3d at 1162 (citation and quotation omitted) (finding that, where two of the four reasons cited for discounting a claimant's credibility were not clear and convincing, the ALJ's error was harmless and did not warrant reversal); *see also Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding harmless error where the record did not support one of the ALJ's several reasons for an adverse credibility finding). Here, the three remaining reasons cited by the ALJ demonstrate that, "to the extent the ALJ found [plaintiff's] testimony incredible, the ALJ did not do so arbitrarily." *Carmickle*, 533 F.3d at 1163. Because the ALJ's error was harmless, her decision should be affirmed.

## IV. CONCLUSION

In light of the record and arguments, the court concludes that substantial evidence in the record supports the ALJ's determination of nondisability. The ALJ did not err in her assessment of plaintiff's impairments or RFC, or in discounting plaintiff's subjective pain testimony. Consequently, the court recommends that plaintiff's motion for remand (#11) be denied and that defendant's cross-motion to affirm (#13) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#11) be **DENIED** and defendant's cross-motion to affirm (#13) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: September 29, 2015.

_____
UNITED STATES MAGISTRATE JUDGE